STATE of Minnesota, Respondent,

v.

John George SALITROS, Petitioner, Appellant.

No. C9–92–1105.

Supreme Court of Minnesota.

May 14, 1993.

Melissa Sheridan, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Robert M.A. Johnson, Anoka County Atty., M. Katherine Doty, Asst. County Atty., Anoka, for respondent.

Considered and decided by the court en banc without oral argument.

COYNE, Justice.

The court of appeals, in an unpublished decision, affirmed defendant's convictions of burglary and theft for unlawfully entering an apartment building storage room with some friends and stealing appliances and other items. Although defendant's counsel did not object to improper statements made by the prosecutor in closing argument, the statements in question plainly constituted serious misconduct. Normally we grant relief for plain error only if the plain error is of a prejudicial nature. However, we have made it clear that if prosecutors persist in making improper statements such as those made in this case, we will not hesitate, in an appropriate case, to make the prosecutor try the case over again. *See, e.g., State v. Merrill*, 428 N.W.2d 361, 373 (Minn.1988). We do so here.

1. An attorney representing a client at trial is an advocate but, as an officer of the court, cannot be a zealot or mouthpiece. The attorney's role is to help insure that the client's case is decided not on the basis of extraneous matters but on the basis of evidence relevant to the issues raised and the legitimate inferences from that evidence. The role of the trial judge

complements the role of counsel. The trial judge is not a passive moderator at a free-for-all. The trial judge is the administrator of justice and has an affirmative obligation to keep counsel within bounds and to insure that the case is decided on the basis of relevant evidence and the proper inferences therefrom, not on the basis of irrelevant or prejudicial matters.

█ In a criminal trial the prosecutor may not seek convictions at any price. Rather, the prosecutor is a "minister of justice" whose obligation is "to guard the rights of the accused as well as to enforce the rights of the public." I ABA Standards for Criminal Justice, The Prosecution Function 3–1.1 and Commentary at 3.7 (2 ed. 1979). Correspondingly, defense counsel is neither a mouthpiece nor an ordinary agent, but a professional advocate governed by rules of professional ethics and decorum. I ABA Standards for Criminal Justice, The Defense Function 4–1.1 and Commentary at 4.8–9 (2 ed. 1979). The trial judge "has the responsibility for safeguarding both the rights of the accused and the interests of the public in the administration of criminal justice." I ABA Standards for Criminal Justice, Special Functions of the Trial Judge 6–1.1 (2 ed. 1979). "The adversary nature of the proceedings does not relieve the trial judge of the obligation of raising on his or her initiative, at all appropriate times and in an appropriate manner, matters which may significantly promote a just determination of the trial." *Id.*

One of the most frequently raised issues in criminal appeals is the issue of misconduct by prosecutors in closing argument. Any attempt to solve the problem has to start with the recognition that misconduct in closing argument is not confined to *prosecutorial* misconduct. Because only convicted defendants can appeal, this court in opinions tends to focus on prosecutorial misconduct. However, this court is aware from reading transcripts of trials that the problem is not limited to the prosecution. Indeed, we have emphasized in our opinions "that prosecutors and defense counsel alike have an ethical responsibility to avoid making improper closing arguments." *State v. Kirvelay*, 311 Minn. 201, 202, 248 N.W.2d 310, 311 (1976).

In the interest of educating both prosecutors and defense attorneys, some of whom may be relatively new to the profession, we here reprint in their entirety the respective ABA Standards dealing with appropriate and inappropriate closing arguments to the jury by prosecutors and by defense attorneys:

Standard 3–5.8. Argument to the jury

(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict.

(e) It is the responsibility of the court to ensure that final argument to the jury is kept within proper, accepted bounds.

Standard 4–7.8. Argument to the jury

(a) In closing argument to the jury the lawyer [i.e. defense counsel] may argue all reasonable inferences from the evidence in the record. It is unprofessional conduct for a lawyer intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

(b) It is unprofessional conduct for a lawyer to express a personal belief or opinion in his or her client's innocence or personal belief or opinion in the truth or falsity of any testimony or evidence, or to attribute the crime to another person

unless such an inference is warranted by the evidence.

(c) A lawyer should not make arguments calculated to inflame the passions or prejudices of the jury.

(d) A lawyer should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law or by making predictions of the consequences of the jury's verdict.

(e) It is the responsibility of the court to ensure that final argument to the jury is kept within proper, accepted bounds.

The standards, of course, are not a complete and detailed guide as to what is appropriate and inappropriate. Rather, they provide a general outline of what is appropriate and inappropriate. As the issue of misconduct in closing argument is so frequently litigated, our cases should be looked to for a more detailed explication of what is appropriate and what is inappropriate.

With this overview, we turn to the specific issues raised by the prosecutor's closing argument in this case.

(a) As long ago as 1933 we began admonishing trial courts and prosecutors not to state that constitutional rights such as the presumption of innocence are only for the benefit of the innocent and not to shield the guilty. *State v. Bauer*, 189 Minn. 280, 284, 249 N.W. 40, 42 (1933). Forty-three years later, in *State v. Thomas*, 307 Minn. 229, 231, 239 N.W.2d 455, 457 (1976), we said that prosecutors had failed to heed what we said in *Bauer* and expressly added that "henceforth it will be grounds for reversal for the court to charge or the prosecutor to argue that a defendant's constitutional rights 'are meant to protect the innocent but not to shield the guilty.'"

In this case the prosecutor resurrected the statement condemned in *Bauer* and *Thomas*, saying (ii) at the outset of closing argument that the constitutional rights which kick in when someone is charged with a crime are designed for the purpose of protecting the innocent and (ii) later that

those constitutional rights that apply to everybody "are designed to protect the innocent * * * [and] have never been designed as a shield for the guilty * * *."

(b) We have made it clear that the prosecutor is free to specifically argue that there is no merit to a particular defense in view of the evidence or no merit to a particular argument, *see State v. Kirvelay*, 311 Minn. 201, 248 N.W.2d 310 (1976), and prosecutors are of course free to make arguments that reasonably anticipate arguments defense counsel will make in closing argument. But in a number of cases we have cautioned prosecutors against generally belittling a particular defense in the abstract, as by saying, *e.g.*, "That's the sort of defense that defendants raise when nothing else will work." *See State v. Bettin*, 309 Minn. 578, 244 N.W.2d 652 (1976). It is clearly improper for a prosecutor to suggest that the arguments of defense counsel are part of some sort of syndrome of standard arguments that one finds defense counsel making in "cases of this sort."

That, however, is precisely what the prosecutor did in this case:

Now there's another real common defense tactic that is used over and over in criminal trials, and consider this: in a criminal trial, who's the focus on? The defendant, Jon Salitros. That's why we're here, to determine his guilt or innocence. So the focus is on him. Defense attorneys don't want the focus to be on their clients.

Defense attorneys will go through trial and they will pick up on anything they can find that will help them redirect the attention away from their client onto something else. Maybe the best example I can give you, the one most of you can probably relate to because you hear about it through the press a lot, are rape cases.

What do you typically hear about a rape case? You hear about the defense attorney putting the victim on trial. They do that because they focus the attention away from the client, what the

client did, and focus the attention on what the victim did.

How does that relate to this case? It comes in the form of Mr. Schillaci's testimony, the apartment maintenance man. The whole question of when he tells us that he had five power tools missing and that there was damage to the door, was he or was he not telling the truth about that? Good Lord! I think we spent at least a half a day, at least, talking about that.

The question was: Was he lying, was he elaborating on it, was he embellishing on it? And they took that issue and we spent a good half day on it, because it focused all the attention off of this defendant, his crime, what he did, and they put it on Mr. Schillaci.

       \*     \*     \*     \*     \*     \*

These are these (sic) collateral issues that during the course of the trial people will bring up. They throw in the kitchen sink. They throw in the collateral issues all because they're trying to get your attention away from the facts.

■ (c) In *State v. Montjoy*, 366 N.W.2d 103, 108–09 (Minn.1985), we criticized the following argument by a prosecutor to the jury to think about "accountability":

This whole trial—you stop to think about it, the whole trial boils down to one word. You know what that one word is? That's this: The word "Accountability." The word "Accountability." The rule that people who break the law have to be held accountable for their actions, because the minute they are not held accountable for the actions, is the same minute that the entire system of justice that brings us all together here in this courtroom becomes meaningless. \* \* \* [I]n just a few minutes now, [defendant's] attorney is going to stand up and I am not sure of the exact words, but I will guarantee you one thing, they are going to come out of his mouth saying one thing and that's this: "Let him go. Help the defendant avoid the consequences of his actions." And that's the very point, ladies and gentlemen, where

that rule of accountability becomes very important.

We said:

It is proper for a prosecutor to talk about what the victim suffers and to talk about accountability, in order to help persuade the jury not to return a verdict based on sympathy for the defendant, but the prosecutor should not emphasize accountability to such an extent as to divert the jury's attention from its true role of deciding whether the state has met its burden of proving defendant guilty beyond a reasonable doubt. It is at least arguable that the argument as to accountability crossed the line of propriety.

366 N.W.2d at 109. In other words, the jury's role is not to enforce the law or teach defendants lessons or make statements to the public or to "let the word go forth"; its role is limited to deciding dispassionately whether the state has met its burden in the case at hand of proving the defendant guilty beyond a reasonable doubt.

The prosecutor in this case made an argument similar to, almost identical to, the argument quoted above that was made in *Montjoy:*

You know, this whole trial could be boiled down into one word, accountability. Accountability. The rule of accountability. That's the rule where we're talking about it is important when we go through life to hold people accountable for their actions, to hold people responsible for the crimes they commit.

We talked earlier about the constitutional guarantees that apply to everybody, and they are designed to protect the innocent. They have never been designed to serve as a shield for the guilty to hide behind.

And I do now, Ladies and Gentlemen, on behalf of the State of Minnesota and the people of Anoka County, based upon the evidence that was presented, I ask you to pull this defendant out from behind that shield and hold him accountable for the crimes that he was involved in committing. \* \* \*.

And when we talk about accountability, I can remember years ago I learned a quote that dealt specifically with why it's important to hold people responsible and accountable. And it went, "If he who breaks the law is not punished, then he who obeys the law is cheated." This and this alone is why law breakers ought to be punished, to authenticate as good and to encourage as useful law-abiding behavior.

Accountability is a lesson that this young man has not yet learned, and the State is asking you to teach it to him.

 2. Over the years we have reversed a number of convictions on the basis of prosecutorial misconduct in closing argument even though defense counsel did not object to the statements. *See* Minn.R.Evid. 103(d) (making it clear that a court may take notice of errors in fundamental law or of plain errors affecting substantial rights even in the absence of objection by counsel). Generally, however, in those cases we have been able to say that the misconduct was prejudicial. *See, e.g., State v. Davis,* 305 Minn. 539, 233 N.W.2d 561 (1975). However, we have also made it clear to prosecutors who persist in employing such tactics that we retain the option of reversing prophylactically. *See, e.g., State v. Merrill,* 428 N.W.2d 361, 373 (Minn.1988). This power to reverse prophylactically or in the interests of justice comes from our power to supervise the trial courts. *See, e.g., State v. Kaiser,* 486 N.W.2d 384, 387 (Minn.1992), where we reversed because the prosecutor failed to disclose evidence that should have been disclosed. In *Kaiser* we reversed even though we were not able to say that the failure to disclose prejudiced the defendant. We said:

We concede that it is at least arguable that the defense was not prejudiced by nondisclosure and that therefore a new trial is not *required.* However, in the exercise of our supervisory power over the trial courts, in the interests of justice, and in the interests of underscoring the fact that our rules, in providing for *complete* disclosure to the defense, are broader than the rules one may extract from the applicable line of federal cases

relied upon by the court of appeals, we have concluded that defendant should receive a new trial.

486 N.W.2d at 387.

Just as in *Kaiser,* in the exercise of our supervisory power over the trial courts and in the interests of justice, we reverse this defendant's conviction and remand for a new trial.

Reversed and remanded for new trial.