STATE of Minnesota, Respondent,

v.

William Troy THOMPSON, Appellant.

No. CX–93–2001.

Court of Appeals of Minnesota.

Aug. 16, 1994.

Review Denied Oct. 27, 1994.

Bradford S. Delapena, Sp. Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin Co. Atty., J. Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

Considered and decided by SHORT, P.J., and SCHUMACHER and HARTEN, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant William Troy Thompson contends that the trial court erred by allowing respondent State of Minnesota to introduce evidence concerning his allegedly dangerous character and the battering that several witnesses had allegedly suffered at the hands of other men. Thompson also claims that the prosecution made improper remarks during the trial. We affirm.

## FACTS

On February 23, 1993, K.W. arrived home from work. Thompson, her boyfriend, was upset with her, and at his request, they went into the bedroom. There, Thompson inserted a metal clothes hanger into K.W.'s rectum and vagina, inserted his finger into K.W.'s rectum, and penetrated her vagina with his penis, ignoring her requests to stop.

After Thompson left, K.W. told her roommate that Thompson had assaulted her. During the next two days, K.W. repeated the allegations of assault to a number of individuals, including her sister, at least two police officers, and a domestic abuse counselor. K.W. also underwent a sexual assault examination that revealed injuries that could have been caused by a coat hangar. As a result of K.W.'s allegations, Thompson was arrested.

On February 25, 1993, however, K.W. told her sister that she had lied about the assault, that she had used the hanger on herself, and that she did not want Thompson to go to prison because of her false allegations. The next morning, K.W. tried to call Karen Roesler, the prosecutor handling the case. Unable to reach her, K.W. eventually contacted Evan Rosen, who was then serving as Thompson's public defender. Although K.W. was pressing the state to drop the charges against Thompson, the state proceeded with the prosecution, basing its case on K.W.'s original statements and evidence that a battered woman often recants truthful accusations she has previously lodged against her abuser. Thompson was found guilty by a jury and given an executed sentence of 300 months.

## ISSUES

1. Did the trial court err by admitting evidence concerning alleged prior bad acts by Thompson?

2. Did the admission of evidence concerning abuse allegedly suffered by defense witnesses affect the jury's verdict?

3. Did the prosecution make improper remarks?

## ANALYSIS

■ 1. At trial, a police officer was allowed to testify that Thompson was thought to carry a weapon and that Thompson had threatened K.W. and her mother. Thompson claims that the trial court erred by overruling his objections to this testimony.

Whether to admit evidence of other crimes, acts, or wrongs lies within the trial court's sound discretion. *State v. Slowinski*, 450 N.W.2d 107, 113 (Minn.1990). The defendant bears the burden of showing that the trial court erred by admitting the evidence. *State v. Berry*, 484 N.W.2d 14, 17 (Minn. 1992).

Evidence of other acts or wrongs is not admissible to prove a person's character. Minn.R.Evid. 404(b). It is admissible, though, if relevant, to show the relationship between the defendant and the victim. *State v. Thieman*, 439 N.W.2d 1, 6 (Minn.1989) (prior threat admissible to show strained relationship); *State v. Black*, 291 N.W.2d 208, 214–15 (Minn.1980) (prior robberies admissible to show relationship between defendant and victims).

In this case, the evidence was introduced to show Thompson's relationships with K.W. and her mother, and it was relevant because the state claimed those relationships were the basis for K.W.'s retraction of her allegations. The trial court did not abuse its discretion by allowing the evidence.

■ 2. The state also introduced evidence that K.W.'s mother, sister, and friend had been abused by other men. Where there is adequate scientific support for the underlying theory, certain types of evidence concerning battered woman's syndrome are admissible. *State v. Hennum*, 441 N.W.2d 793, 798–99 (Minn.1989). Where, however, there is no demonstration of a scientifically reliable correlation between a form of abuse and its purported effect on a witness, evidence concerning the abuse is generally irrelevant, and thus unfairly prejudicial and inadmissible. *See State v. Loebach*, 310 N.W.2d 58, 62–64 (Minn.1981) (because of lack of scientific reliability and diagnostic accuracy, prosecutor may not ask defendant whether he was beaten as child in order to imply that he is more likely to be child abuser); *State v. Jahnke*, 353 N.W.2d 606, 609–10 (Minn.App.1984) ("highly prejudicial" for prosecutor to ask defendant in intrafamilial sexual abuse case whether she was victim of childhood sexual abuse); Minn.R.Evid. 402 (irrelevant evidence not admissible).

■ Here, the state offered the evidence of abuse to show that the witnesses were less able to evaluate whether K.W. was a battered woman since they had themselves been battered. Because the state offered no scientific or statistical support for this theory, the evidence was irrelevant. Nevertheless, the jury was as likely to infer from the contested evidence that the witnesses were better able to recognize abuse as it was to infer that they would be less able to recognize it. Therefore, the risk of unfair prejudice that often arises when this type of evidence is improperly admitted was not present in this case, and reversal of Thompson's conviction is not justified. *See State v. Naylor*, 474 N.W.2d 314, 318 (Minn.1991) (reversal warranted only if court has reasonable belief that erroneously admitted evidence affected verdict).

■ 3. Thompson claims the prosecution made improper remarks during the trial. Prosecutorial misconduct justifies reversal if the defendant was prejudiced as a result. *State v. Salitros*, 499 N.W.2d 815, 820 (Minn. 1993).

■ At trial, the state called Roesler, who had since been removed from the case as prosecutor because of her involvement with K.W.'s recantation. Over Thompson's objection, she testified that her first priority in domestic abuse prosecutions is to hold the abuser accountable for his or her behavior. A prosecutor should not emphasize accountability to the extent that the jury is diverted from its proper role of deciding whether the state has proved the defendant guilty beyond a reasonable doubt. *State v. Montjoy*, 366 N.W.2d 103, 109 (Minn.1985). Although Roesler was merely a witness in this case, the acting prosecutor had a responsibility to take care that the direct examination remained within proper boundaries. *Cf.* Minn. R.Prof. Conduct 3.8 cmt. (prosecutor has obligation to see that defendant receives procedural justice). We conclude, however, that Roesler's comment about accountability, while of questionable probative value, was little more than a passing reference and cannot reasonably be thought to have diverted the jury from its appropriate function. *Cf.*

*Salitros,* 499 N.W.2d at 819–20; *Montjoy,* 366 N.W.2d at 108–09.

■ Thompson also challenges a number of the remarks made by the prosecutor during closing argument, although he did not object to them at trial. A prosecutor's improper remarks may require reversal even if no objection was made at the time. *See Salitros,* 499 N.W.2d at 820 (court may take notice of plain error affecting substantial right or error of fundamental law even if no objection entered).

■ During her closing argument, the prosecutor said:

The State doesn't represent the victim in prosecution in criminal cases. Rather the State represents the society. The State represents the people of the State of Minnesota. And, the measure of the quality of our society is the protections that we afford our citizens, and one of the protections in our society is the right to go through your life and not be assaulted, and it doesn't matter if you're a man or a woman and it doesn't matter if you're rich or poor, it doesn't matter the color of your skin, it doesn't matter your religion. The fact is that all members of our society have that right and have that protection.

* * * * * *

She's [K.W.] an angry person, but she's also a vulnerable person. She's a person who's at risk. What does it say about our society if we just let something like this go. And, maybe you would say, well, if a person is assaulted once and they don't want to go forward and prosecute, that's understandable, and maybe if they're even assaulted twice, but when it happens again and again and again and it gets worse and worse, what does it say about our society if we sit back and do nothing and we let it happen?

All of the citizens in our society have this right of protection against criminal activity against them, and, at some point, as a prosecutor and at some point as the State and at some point as the members of this community, we have to say enough is enough; this can't happen; this is wrong. And, State must go forward with the pros-

ecution in that case, and a case where a woman is assaulted and a woman is raped with a coat hanger is one of those kinds of cases.

* * * * * *

No woman should have to suffer what [K.W.] suffered. It's not right. It's a crime in our society and our society has a responsibility to prosecute those crimes where they occur, to prosecute crimes where they go on and on and on. No woman should have to suffer the way she suffered. It's wrong. It's a crime.

These remarks arguably implied that the jury could serve public safety by delivering a verdict demonstrating public intolerance of crime. Any such implication is inappropriate. *Id.* at 819.

■ The prosecutor further asserted that one of the state's experts, psychologist Denise Wilder, testified "about several different criteria and characteristics of battered women" and that K.W. "fits into all those categories." Wilder did not say that K.W. fit these characteristics; indeed, she did not discuss K.W. with any particularity whatsoever. Nor would it have been permissible for her to do so. *See Hennum,* 441 N.W.2d at 799 (expert may not testify that individual actually suffers from battered woman syndrome). The prosecutor's remarks to the contrary were clearly improper.

■ The prosecutor also said:

And, Mr. Rosen then went before the judge and said, we don't want to let [K.W.'s] medical records into the trial in this case. He's a very zealous and good advocate, and he did that for a reason. The reason is without the medical records in this case, State wouldn't have a case.

* * * * * *

And, that's why Evan Rosen tried to get the medical evidence and the physical—the medical evidence in this case out of the trial, because then you wouldn't have those vaginal swabs. If you didn't have the vaginal swabs, then you wouldn't know that those vaginal swabs that went over those lacerations had sperm and blood on them.

That's why as a zealot advocate he tried to keep that out.

A prosecutor may not suggest that a defendant objected to evidence because it was incriminating. *State v. Jones,* 277 Minn. 174, 180, 152 N.W.2d 67, 73 (1967).

In spite of the prosecutor's improper statements, reversal is appropriate only if Thompson was prejudiced as a result. *Salitros,* 499 N.W.2d at 820; *State v. Merrill,* 428 N.W.2d 361, 372–73 (Minn.1988). Police officers and a domestic abuse counselor testified that K.W. had told them that Thompson had assaulted her, a psychologist testified as to why an abused woman might recant her allegations, and the physical evidence supported K.W.'s original story. In short, the evidence adduced at trial is sufficient to convince us that any impropriety by the prosecution did not affect the jury's verdict.

## DECISION

The trial court did not abuse its discretion by admitting evidence of Thompson's past behavior. The jury's verdict was not affected by the admission of evidence concerning domestic abuse inflicted on defense witnesses. Thompson was not prejudiced by the prosecutors' improper statements in final argument.

Affirmed.