*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1317**

State of Minnesota,
Respondent,

vs.

John Paul Warzecha,
Appellant.

**Filed June 15, 2015
Affirmed
Minge, Judge***

Mille Lacs County District Court
File No. 48-CR-12-1806

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Joe Walsh, Mille Lacs County Attorney, Milaca, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Schellhas, Presiding Judge; Larkin, Judge; and Minge, Judge.

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**MINGE**, Judge

Appellant John Warzecha was convicted of third- and fourth-degree criminal sexual conduct for actions perpetrated against K.G. Appellant asserts that the prosecutor committed misconduct during her closing statement by disparaging appellant's consent defense. Because the prosecutor did not commit plain error, we affirm.

## FACTS

On August 18, 2012, K.G. and some friends walked to Muggs, a local bar in Wahkon, Minnesota. K.G. testified that appellant, whom K.G. had never met, approached her at Muggs, offered her a hundred dollar check, said: "This is to come home with me tonight," and that she told appellant to leave her alone. After Muggs closed, K.G. walked to her apartment building with one of her friends.

K.G.'s apartment was small. The living room was divided by a curtain that had an area that served as a makeshift bedroom. K.G. slept in this area. Her three teenage boys slept in the regular bedroom. During the weekend of August 18-19, 2012, only K.G.'s oldest son, 18-year-old B.G., was at the apartment. After K.G. arrived at her apartment, she discovered that appellant had gone to the apartment building with some of her friends, who also lived there, because he needed a place to sleep. After some discussion among the friends, K.G. agreed to let appellant sleep on her couch in the living room area. K.G. went into her makeshift bedroom area, and appellant stayed on the couch. B.G. was in the boys' bedroom listening to music with earphones.

K.G. testified that she awoke to appellant kissing her, that she told him to "go away, to just stop," but that appellant continued kissing her on the face and "further down," that appellant then removed the blankets and began performing oral sex on her, that she told appellant to stop and attempted to scream, but that he covered her mouth with a pillow, and that appellant penetrated K.G. with his fingers and penis. During this incident having heard some unusual sounds, K.G.'s male friend from downstairs entered her apartment, saw appellant in K.G.'s bed, and pulled him off K.G. Hearing the activity, B.G. entered the living room. The male friend and B.G. pushed appellant out of the apartment and forced him down the stairs and out to the parking lot. B.G. called the police. K.G. was taken to a hospital where an examination was performed and a DNA sample was taken. Minnesota Bureau of Criminal Apprehension test results later disclosed appellant's DNA was on K.G.'s face and neck.

Appellant disputes K.G.'s version of events. Appellant claimed that K.G. approached him at Muggs on two different occasions. He denied writing her a check. Appellant claims that K.G. invited him into her apartment and came from her sleeping area in the middle of the night and tried to kiss him. Appellant insisted that any sexual acts were consensual.

The state charged appellant with third- and fourth-degree criminal sexual conduct. Appellant pleaded not guilty and the matter proceeded to trial. The jury found appellant guilty and the district court imposed a 74-month prison sentence. This appeal followed.

**D E C I S I O N**

The issue on appeal is whether certain unobjected-to statements by the prosecutor constituted such misconduct as to call for reversal. In reviewing claims of unobjected-to prosecutorial misconduct, we apply a modified four part plain-error test. *State v. Ramey*, 721 N.W.2d 294, 298-99 (Minn. 2006). To establish plain error, appellant must first prove that the prosecutor's conduct constituted error and second that the error was plain—that is, "[it] contravenes case law, a rule, or a standard of conduct." *Id*. at 302. Then, if appellant satisfies his burden, the third prong requires the state to prove that the error did not affect appellant's substantial rights. *Id*. The state must show there is no reasonable likelihood that the absence of the misconduct would have a significant effect on the jury's verdict. *Id*.; *see State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998) (noting that an error affects substantial rights when it is "prejudicial and affect[s] the outcome of the case"). If all of the first three prongs are met, the fourth prong requires that the reviewing court assess whether the error must "be addressed to ensure fairness and the integrity of the judicial proceedings." *Ramey*, 721 N.W.2d at 302. Ultimately, we will reverse a conviction "only if the [prosecutorial] misconduct, when considered in light of the whole trial, impaired [appellant's] right to a fair trial." *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003).

Appellant asserts that the misconduct was statements by the prosecutor that improperly disparaged his defense. Appellant points to the prosecutor's statement "that because 'we have DNA . . . the defendant has to claim it was consensual. He can't deny

he was there.'" This statement was contained in the following part of the prosecutor's closing argument:

> He wants you to believe there are no eye witnesses, but there were. There were witnesses that heard key important things. [The friend downstairs] heard the muffled sounds and are consistent with what [K.G.] told you, that the pillow was being put over her mouth or that the [appellant] kept putting his fists in her mouth to stop her from yelling out, and that would be creating muffled sounds. [The friend] heard that. He told the responding officer that initially on August 19th. He told Deputy Barnes that a few days later, and [B.G.] also did the same thing. [B.G.] heard his mom yelling out. She said repeatedly [the friend's] name, and he said when asked, was she yelling? As you recall, he had his music playing, but he said it definitely was not a conversational tone and that it was repeated *and obviously we have the DNA, so of course the defendant has to claim it was consensual. He can't deny he was there.*
>     Now, we have corroboration, corroboration to support what [K.G.] is saying.

(Emphasis added.)

Appellant argues that these statements so disparaged his consent defense as to deny him a fair trial. Appellant correctly argues that disparaging a defense can constitute prosecutorial misconduct. *State v. Salitros*, 499 N.W.2d 815, 818 (Minn. 1993). However, prosecutors may argue that a defense theory has no merit or is implausible in view of the evidence offered at trial. *Id.*

Here, the prosecutor did not characterize appellant's consent defense as a formula-driven stock defense. Rather, the prosecutor's statements suggested that appellant was claiming consent because the strength of evidence presented at trial—the friend's and B.G.'s eyewitness testimony, along with the DNA test results—was enough to prove that

5

appellant engaged in a sexual act with K.G. In this setting, an obvious issue would be whether appellant's sexual contact with K.G. was consensual.

Although the prosecutor's specific comment may have been direct and strong, it was harmless because the comment was brief in light of the closing argument as a whole. We review closing arguments in their entirety when determining whether prosecutorial misconduct occurred. *State v. Vue*, 797 N.W.2d 5, 15 (Minn. 2011). Here, the prosecutor's closing argument spanned 15 pages in the trial transcript. Appellant challenged a single phrase, which was minor with the prosecutor's entire closing argument. Moreover, consent was the central issue at trial. The jury heard evidence from K.G., from the eyewitnesses that corroborated her testimony, and from appellant. In this context, the prosecutor's comment did not dismiss appellant's consent defense, but merely explained the parties' arguments based on the developments in the investigation of the incident and the evidence presented at trial. We therefore conclude that the prosecutor did not commit plain error that affected appellant's substantial rights or impaired appellant's right to a fair trial. Because the state met its burden, we do not address prong four.

Appellant filed a pro se supplemental brief presenting eight alternative claims without discussion or legal argument. None of the claims was presented to the district court. We generally refuse to consider arguments that are not presented to and decided by the district court, *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996), but exceptions may be made for pro se criminal appellants. *See Dale v. State*, 535 N.W.2d 619, 624 (Minn. 1995) (considering pro se arguments raised on appeal).

Seven of appellant's claims assert ineffective assistance of counsel. A defendant has the right to effective assistance of counsel, which we examine under a two-prong analysis. *State v. Bobo*, 770 N.W.2d 129, 137 (Minn. 2009). First, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 446 U.S. 668, 687–88, 104 S. Ct. 2052, 2064 (1984). We apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S. Ct. at 2065. Second, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.

In reviewing appellant's ineffective-assistance-of-counsel claims, we observe that they focus on defense counsel's trial strategy. We ordinarily "give trial counsel wide latitude to determine the best strategy for the client." *State v. Nicks*, 831 N.W.2d 493, 506 (Minn. 2013). "Particular deference is given to the decisions of counsel regarding trial strategy. 'Which witnesses to call at trial and what information to present to the jury are questions that lie within the proper discretion of the trial counsel.'" *State v. Lahue*, 585 N.W.2d 785, 789–90 (Minn. 1998) (quoting *State v. Heinkel*, 322 N.W.2d 322, 326 (Minn. 1982)). When considering trial counsel's performance in this case, appellant's claims are not persuasive and do not satisfy the two-prong analysis.

Appellant also claims that the district court abused its discretion by sentencing him to 74 months. Generally, we will not "review a district court's exercise of its discretion to sentence a defendant when the sentence imposed is within the presumptive guidelines range." *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *review denied* (Minn.

7

July 20, 2010). Because the district court sentenced appellant within the range provided in the applicable box on the sentencing guidelines' grid and because appellant made no showing of compelling reasons to depart from the presumptive range, we conclude that the district court did not abuse its discretion when sentencing appellant to 74 months.

**Affirmed.**