**STATE of Minnesota, Respondent,**

v.

**Donald Lee DUNCAN, Appellant.**

**No. CX–99–665.**

Court of Appeals of Minnesota.

March 14, 2000.

Review Denied May 16, 2000.

Mike Hatch, Attorney General,St. Paul, and Paul J. Kiltinen, Dodge County Attorney, Gary Remine, Assistant County Attorney, Mantorville, for respondent.

John M. Stuart, State Public Defender, Ann McCaughan, Assistant State Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, Presiding Judge, KLAPHAKE, Judge, and SHUMAKER, Judge.

## OPINION

KLAPHAKE, Judge

Donald Lee Duncan appeals his convictions for two counts of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct. On appeal, Duncan argues that (1) the prosecutor committed misconduct in his closing

argument; (2) the trial court improperly admitted *Spriegl* evidence; (3) the trial court erred in instructing the jury on Duncan's right not to testify without obtaining his consent; and (4) the evidence was insufficient to support his convictions for criminal sexual conduct in the first degree. Because Duncan was denied his right to a fair trial, we reverse and remand.

## FACTS

In early 1998, Duncan was residing with his daughter in Mantorville. Because Duncan was a five-time convicted sex offender and his daughter was one of his prior victims, this violated a condition of his release from prison. Another condition of release was that Duncan was to have no contact with minors. Despite this restriction, Duncan spent time with three juvenile females: ten-year-old D.N., nine-year-old K.H., and three-year-old A.N. On February 18, 1998, D.N. and K.H. alleged that Duncan had sexually assaulted them. D.N. also indicated that Duncan had assaulted A.N., but A.N. never made such a claim, and Duncan was not charged with any offense related to A.N.

D.N. and K.H. provided videotaped statements to Dodge County Chief Deputy Gary Thompson. D.N. claimed that Duncan put his hand underneath her underwear and rubbed her vagina. K.H. claimed that Duncan had touched her vagina on two separate occasions. In Thompson's interview with Duncan, Thompson made numerous references to A.N., including an accusation that Duncan had fondled her.

Later that night, Deputy John Snaza responded to a call from D.N.'s father, who claimed that the girls had not provided Thompson with complete information. Snaza interviewed D.N. and K.H. and recorded the conversation. K.H. twice answered in the affirmative when asked whether Duncan had put his finger inside of her vagina. Without prompting, K.H. also volunteered an apparent further reference to penetration: "He like squeezed it

in, and it hurt. His fingernails is really hurting." D.N. said that Duncan's fingers had not gone in her body, but that he had rubbed around her vagina and in her "crack." Duncan was charged with one count of first-degree criminal sexual conduct for each girl in violation of Minn.Stat. § 609.342, subd. 1(a) (1996), and one count of second-degree criminal sexual conduct for each girl in violation of Minn.Stat. § 609.343, subd. 1(a) (1996).

Prior to trial, the court ruled that the interviews with D.N., K.H., and Duncan were admissible in their entirety, without redacting references to A.N. The court also ruled that the state would be allowed to use Duncan's five prior convictions as *Spriegl* evidence.

At trial, both D.N. and K.H. testified. K.H. identified her general vaginal area as "2." She testified that Duncan had touched her on two separate occasions and that at one time he touched her "2." D.N. testified that Duncan had touched her "crotch" with his fingers. She said that Duncan had touched "outside" her crotch, as opposed to "inside," and that he had touched her "in between the lips," "not very far inside, but just in between them."

The defense theory at trial was that Duncan had not engaged in any inappropriate conduct with the girls and, possibly, that the claims had been fabricated by Duncan's daughter. Neither the daughter nor Duncan testified. Following the close of Duncan's case, the trial court allowed the state to present evidence of Duncan's conditions of release for his previous convictions.

In his closing argument, the prosecutor referred to Duncan as a "predator" and twice said that Duncan was "lying" when he denied inappropriate contact with the girls. The prosecutor referred extensively to Duncan's prior convictions. The prosecutor also commented on defense theories, potential future victims of Duncan, and efforts of law enforcement officials. Dun-

can was convicted on all four counts and sentenced to two concurrent life sentences.

## ISSUES

1. Did the prosecutor commit misconduct in his closing argument?

2. Did the trial court err in admitting *Spriegl* evidence?

3. Did the trial court err in instructing the jury on Duncan's right not to testify without obtaining his consent on the record?

4. Were the trial court's errors and the prosecutorial misconduct prejudicial?

5. Was the evidence sufficient to support Duncan's convictions?

6. Should parts of the state's appellate brief be stricken?

## ANALYSIS

### I. Prosecutorial Misconduct

■ Duncan argues that the prosecutor committed numerous instances of misconduct during his closing argument. We agree. A prosecutor's duty is not to seek a conviction at any price but, rather, is to act as a "minister of justice." *State v. Salitros*, 499 N.W.2d 815, 817 (Minn.1993) (quotation omitted). The prosecutor's closing arguments must not "distract the jury from its proper role of deciding whether the state has met its burden." *State v. Ashby*, 567 N.W.2d 21, 27 (Minn. 1997) (citation omitted). In the instant case, the prosecutor made numerous improper comments that we detail below.

#### A. Improper Use of Spriegl Evidence

■ The prosecutor referred at length to Duncan's five prior criminal sexual conduct convictions. There is nothing inappropriate, of course, about referring to properly admitted *Spriegl* evidence in a closing argument. But such evidence may not be used as a means to attack the defendant's character or to establish a criminal propensity. *See State v. DeWald*, 463 N.W.2d 741, 745 (Minn.1990) (prosecu-

torial misconduct to use convictions admitted for impeachment purposes to attack character); Minn. R. Evid. 404(b) (evidence of character may not be used to show propensity).

■ While some of the prosecutor's argument with respect to the convictions was proper, he improperly insinuated that Duncan was merely following his nature in committing the present offenses. In the most egregious instance, the prosecutor argued, "When we get to Mr. Duncan, the theme is, did the zebra change its stripes?" There, the implication clearly was that Duncan's prior crimes showed his propensity to engage in further criminal sexual conduct. This improper use of Duncan's prior convictions constituted serious misconduct.

#### B. Injecting Personal Opinions on Credibility

■ On two separate occasions in his closing argument, the prosecutor said that Duncan was "lying" when he denied inappropriate contact with the girls. The supreme court has set forth the limits for prosecutorial comment on credibility as follows:

> An advocate may indeed point to circumstances which cast doubt upon a witness' veracity or which corroborates his or her testimony, but he may not throw onto the scales of credibility the weight of his own personal opinion.

*State v. Ture*, 353 N.W.2d 502, 516 (Minn. 1984). In the present case, the prosecutor clearly crossed the line, injecting his personal opinion that Duncan was lying.

#### C. Disparaging the Defense

In response to Duncan's claim that he was going to be a good grandfather, the prosecutor said, "Well, pity the grandkid, because he is practicing [on K.H. and D.N.]." It is prosecutorial misconduct to disparage the defendant himself. *State v. Griese*, 565 N.W.2d 419, 427 (Minn.1997); *State v. Gerald*, 486 N.W.2d 799, 803

**556** 

(Minn.App.1992). The prosecutor's statement was clearly intended to belittle and disparage Duncan.

### D. Inflaming Juror Passions

. The prosecutor referred to Duncan as a "predator" and used various forms of the word several other times during his closing argument. The prosecutor must refrain from making statements that will inflame the passions or prejudices of the jury. *State v. Porter,* 526 N.W.2d 359, 363 (Minn.1995). Although there was some evidence regarding the predatory behavior of child molesters in the record, we can only infer that the prosecutor's repeated use of this term during his closing argument was intended to inflame the prejudices of the jury.

### E. Protecting Society

 It is improper for the prosecutor to make statements urging the jury to protect society or to send a message with its verdict. *Salitros,* 499 N.W.2d at 819; *State v. Thompson,* 520 N.W.2d 468, 472 (Minn.App.1994), *review denied* (Minn. Oct. 27, 1994). In the present case, the prosecutor argued:

> What is fortunate in this case is that this was found out soon enough, because the progression of perpetration and control of a victim demonstrated by [Duncan's] history leads from sexual contacts to multiple incidents of penetration over an extended period of time.
>
> * * * *
>
> It's time in this country that we start believing kids. * * * At least there is some pride in Dodge County law enforcement[.] * * * At least Dodge County law enforcement has officers trained in the area of how to treat children respectfully.

The remarks could be construed as a request that the jury return a guilty verdict in order (1) to protect future victims of Duncan, and (2) to send a message generally affirming the allegations of children

and the work of law enforcement. The remarks constituted misconduct.

### F. Argument as a Whole

 In determining whether prosecutorial misconduct was prejudicial, we must consider the argument as a whole. *State v. Richardson,* 514 N.W.2d 573, 579 (Minn. App.1994). We are not convinced that the prosecutor's misconduct, although serious, was prejudicial. We need not determine whether the misconduct was prejudicial, however, because we hold that the misconduct, combined with other trial errors, denied Duncan a fair trial.

## II. Spriegl Evidence

 Evidence of other crimes is not admissible to prove the defendant's character. Minn. R. Evid. 404(b). Other crimes evidence, however, may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

 Evidence of other crimes should not be admitted into evidence unless:

> (1) notice is given that the state intends to use the evidence; (2) the state clearly indicates what the evidence is being offered to prove; (3) the evidence is clear and convincing that the defendant participated in the other offense; (4) the *Spriegl* evidence is relevant and material to the state's case; and (5) the probative value of the *Spriegl* evidence is not outweighed by its potential for unfair prejudice.

*State v. Kennedy,* 585 N.W.2d 385, 389 (Minn.1998) (citations omitted).

 Duncan argues that the trial court committed reversible error when it allowed three types of evidence: (1) the references to A.N. in the videotaped and audiotaped interviews; (2) his prior criminal sexual conduct convictions; and (3) his parole violations. The trial court's evidentiary rulings will not be disturbed absent a clear abuse of discretion. *State v. Kelly,* 435 N.W.2d 807, 813 (Minn.1989).

## A. References to A.N.

■ Over Duncan's objection, the trial court played the taped interviews without redacting any reference to A.N. Neither the trial court nor the state contended that the references' potential for prejudice did not substantially outweigh their probative value. Instead, the trial court thought the references to A.N. were "inextricably intertwined with the evidence of the charged offenses" and the state similarly argues that redacting the tapes would have been too difficult. We are not persuaded by those arguments. There are many simple ways to redact statements from taped interviews without detracting from the content. The tapes may be edited, the inadmissible portions may be muted, or a transcript omitting the portions may be read to the jury. Considering the potential for prejudice in allowing the jury to hear the references to A.N. and the ease with which the references could have been omitted, the trial court erred in failing to require redaction of the tapes' references to A.N.

## B. Duncan's Prior Convictions

■ Duncan challenges the admission, as *Spriegl* evidence, of his five prior criminal sexual conduct convictions. Duncan concedes that all but one of the *Spriegl* factors were met. Specifically, Duncan contends that the probative value of the evidence was outweighed by its unfair prejudice.

■ In criminal sexual conduct cases, prior sexual conduct convictions are often probative where the defendant disputes that the sexual conduct occurred or where the defendant asserts the victim is fabricating the allegations. *See State v. Wermerskirchen,* 497 N.W.2d 235, 241–42 (Minn.1993). In such cases, the prior convictions are relevant to show a common plan or scheme on the part of the defendant. *Id.*

Here, Duncan contended that the sexual conduct never occurred and that the alle-gations against him were fabricated at his daughter's behest. His prior criminal sexual conduct convictions, all involving young girls, were therefore highly relevant to show a common plan or scheme.

The potential for prejudice, however, is likewise great. The dangers inherent in admitting, in a criminal sexual conduct prosecution, five prior sexual conduct convictions is obvious. Admitting the convictions presented a relatively high risk that the jury might convict based on the prior convictions alone.

In determining the potential for prejudice, the trial court must also consider how crucial the evidence is to the state's case. *Kennedy,* 585 N.W.2d at 391–92. The *Spriegl* evidence should be admitted only if the state's case is weak. *Id.* The state's case against Duncan was weak. The state's evidence essentially consisted of the statements of the two girls. There was no physical evidence of assault. Moreover, Duncan presented evidence that one of the victims had recanted her story. Although the question of whether the probative value of the convictions was outweighed by their prejudice is a close one, we conclude that the admission of the convictions was not an abuse of discretion.

## C. Duncan's Conditions of Release

■ Duncan argues the trial court erred by admitting testimony regarding his conditions of release from prison. The state argues that the evidence was relevant to show that his daughter had no motive to fabricate sexual misconduct claims because she could send Duncan back to prison merely by reporting his parole violations. We disagree. The probative value of the violations was minimal. Further, Duncan faced much more serious sanctions for new criminal sexual conduct charges than he would face for a parole violation. Hence, admission of the evidence was erroneous.

### III. Jury Instruction

The trial court instructed the jury on the existence of Duncan's right not to testify and on their duty to decline to draw any inferences from his failure to testify. The trial court did not obtain on the record Duncan's consent to give the instruction. Duncan argues that the trial court committed reversible error in giving the instruction without obtaining his consent.

■■ Ordinarily, an instruction on a defendant's right not to testify should not be given unless the defendant personally requests it. *State v. Thompson*, 430 N.W.2d 151, 153 (Minn.1988). A record should be made of the defendant's preference on the issue. *Id.* In the present case, the trial court clearly erred by giving the jury instruction without Duncan's consent. The state argues that Duncan implicitly consented when his attorney failed to object to the instruction. But that argument is contrary to the precepts set forth in *Thompson* requiring the defendant to expressly consent to the instruction.

■■ The fact that the record is silent as to whether the defendant wanted the instruction does not mandate a new trial. *Id.* As with the other errors, we are not prepared to hold that the failure to obtain Duncan's consent was reversible error. Nevertheless, we observe that, in light of the fact that the central issue in the case was the credibility of the girls' statements, the jury instructions may have had the deleterious effect of emphasizing Duncan's failure to take the witness stand and deny the allegations.

### IV. Cumulative Effect of Errors

■■ Each instance of error or misconduct in this case, when considered individually, was harmless. But our appellate decisions have repeatedly emphasized that when the cumulative effect of numerous errors constitutes the denial of a fair trial, the defendant is entitled to a new trial. *See, e.g., State v. Keeton*, 589 N.W.2d 85, 91 (Minn.1998); *State v. Hawkins*, 260 N.W.2d 150, 157 (Minn.1977); *State v. Jahnke*, 353 N.W.2d 606, 611 (Minn.App. 1984).

■■ This case was a relatively close one. The prosecution depended almost solely on the somewhat imprecise and equivocal interviews and testimony of the young victims. Considering both the cumulative effect of all the trial errors and misconduct, as well as the closeness of the case, we conclude that Duncan was deprived of his right to a fair trial. Accordingly, we reverse and remand for a new trial.

### V. Sufficiency of the Evidence

■■ Duncan also argues, in addition to the error we have found to be prejudicial, that the evidence was insufficient to sustain his convictions on the two counts of first-degree criminal sexual conduct. Minn.Stat. §§ 609.342, subd. 1(a), 609.343, subd. 1(a) (1996). We have reviewed the record and determine that there was sufficient evidence to support the convictions; on remand the state will be allowed to attempt to prove its case on the first-degree charges once again.[1]

1. Duncan also contends, but does not raise as a separate basis for reversal, that the trial court's jury instruction on penetration was erroneous. The trial court instructed the jury that "[p]enetration includes rubbing of the fingers between the folds of the vagina." The court adapted its instruction from the language of this court's decision in *State v. Shamp*, 422 N.W.2d 520 (Minn.App.1988), *review denied* (Minn. June 10, 1988).

In this regard, we note only that the supreme court has cautioned against the use of language in appellate decisions for jury instructions because the language, when taken out of context, can be misleading. *Alholm v. Wilt*, 394 N.W.2d 488, 491 (Minn.1986). Moreover, such instructions may have the impermissible effect of over-emphasizing particular facts. *Id.* We further note that 10 *Minnesota Practice*, CRIMJIG 12.05 (1999), generally provides a sufficient definition of "sexual penetration."

### VI. Motion to Strike

[redacted] Duncan moved to strike nine separate parts of the state's appellate brief. The motion to strike has been used generally, but not exclusively, as a remedy where a brief references facts not in the record. *See, e.g., State v. Dalbec,* 594 N.W.2d 530, 533 (Minn.App.1999); *Pfleiderer v. Pfleiderer,* 591 N.W.2d 729, 732 (Minn.App.1999); *Bartl v. Bartl,* 497 N.W.2d 295, 301 (Minn.App.1993). The motion has also been granted where the brief does not conform to the rules of appellate procedure, *Cole v. Star Tribune,* 581 N.W.2d 364, 371–72 (Minn.App.1998), or where the "brief is used as a vehicle for disrespect, insult, and slanderous accusations." *State v. Gamelgard,* 287 Minn. 74, 82, 177 N.W.2d 404, 409 (1970).

Duncan's motion seeks to strike arguments that are not supported by legal citations and arguments with which he disagrees. As such, they do not violate this court's rules or existing case law. Accordingly, we decline to strike any part of the state's brief.

### DECISION

The prosecutor committed misconduct in his closing argument. The trial court also erred in not redacting references to *Spriegl* evidence for an uncharged and unproven incident and instructing the jury without Duncan's consent on his right not to testify. Taken cumulatively, these errors deprived Duncan of his right to a fair trial.

**Reversed and remanded for new trial; motion denied.**