*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1707**

State of Minnesota,
Respondent,

vs.

Charles Wesley Jones,
Appellant.

**Filed August 29, 2016
Affirmed
Larkin, Judge**

Mower County District Court
File No. 50-CR-14-552

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Jeremy Clinefelter, Assistant County Attorney, Austin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Smith,

Tracy M., Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Following a jury trial, appellant was convicted of violating Minnesota's predatory-offender-registration statute. Appellant challenges his conviction, arguing that the district court erred by failing to give the jury a unanimity instruction and by failing to instruct the jury that "knowingly" means "perceived directly." Appellant also argues that the cumulative effect of the alleged instructional errors resulted in an unfair trial. We affirm.

**FACTS**

Appellant Charles Wesley Jones is required to register as a predatory offender. He initially registered in 2011. In March 2014, Jones met with corrections agent Kelly Blake for his weekly check-in. At that meeting, Blake helped Jones to update his address and telephone number on his predatory-offender registration (POR) with the Minnesota Bureau of Criminal Apprehension (BCA). Blake reviewed the vehicle-registration portion of a POR form with Jones and asked him if he had any vehicles that he needed to register. Jones replied that he did not have any vehicles to register.

A few days later, Blake learned that Jones might own or be operating a vehicle. A search of Department of Motor Vehicles (DMV) records confirmed that a vehicle was registered to Jones.[1] Blake shared this information with Detective Mark Haider. Haider

---

[1] It appears that the relevant state agency is Driver and Vehicle Services, a division of the Minnesota Department of Public Safety. However, because the attorneys and witnesses consistently referred to the "Department of Motor Vehicles" and "DMV" in the district court, we refer to the relevant agency as the "Department of Motor Vehicles" and "DMV" in the body of this opinion.

investigated and confirmed that Jones was the registered owner of a GMC Sierra. Later that month, Detective Haider stopped Jones while he was driving the GMC Sierra. Jones initially claimed that the vehicle belonged to his boss. When detective Haider challenged that assertion, Jones stated that he was in the process of buying the vehicle from his boss. Detective Haider issued Jones a citation for driving after revocation and without insurance and arrested him.

During a post-arrest interrogation, Jones denied violating POR requirements, explaining that he honestly thought he had satisfied his obligation to register his vehicle by registering it with the DMV. Jones admitted that he knew he was required to register his address, his job, and anywhere he stayed for more than a couple of nights with the BCA, but he insisted that he was not aware that he was required to register his vehicles with the BCA.

The state charged Jones with a single count of knowingly violating Minnesota's POR requirements or intentionally providing false information to a corrections agent, and the case was tried to a jury. Several BCA agents testified at trial. Agent Steve Schmiel testified that Jones initially registered a 1998 GMC Jimmy with the BCA. The state introduced Jones's initial POR form, and Schmiel testified that the form is one that every offender is required to review. The initial POR form indicates that Jones initialed each line of the document, including the section informing him that he must register any vehicles he owns or operates. Agent Troy Diekman, Jones's supervising agent, testified that Jones never told him about the GMC Sierra and that if an offender had mentioned the purchase of a new vehicle, he would have instructed the offender to register the vehicle with the

BCA. Agent Blake testified that she asked Jones whether he had "any vehicles that he owns or operates [that] need to be registered" and Jones responded that he did not.

Jones testified at trial. He explained that he thought that he had fulfilled his obligation to register by registering his vehicle with the DMV. However, Jones conceded that he knew he could not satisfy his obligation by changing his address at the post office or registering his employment with a Minnesota agency other than the BCA. Jones also conceded that he had initialed every paragraph of his initial POR form and that Detective Haider and Agent Blake had "slightly" reviewed his registration responsibilities with him. Jones testified he had owned "at least ten" vehicles since 2011 but had never registered any of them with the BCA. Contrary to Agent Diekman's testimony, Jones testified that Diekman knew about the GMC Sierra.

On cross-examination, Jones testified that although he had completed several POR forms, he never thoroughly read the forms and did not know that he was required to register his vehicles with the BCA. Jones also testified that he did not remember registering his GMC Jimmy with the BCA. When confronted with the initial POR form showing that his GMC Jimmy was registered with the BCA, Jones claimed that although some of the handwriting on the form was his, the handwriting depicting the vehicle's license plate number was not his. The state also produced a POR form executed by Jones informing the BCA that he had sold the GMC Jimmy.

At one point during cross-examination Jones appeared to change his defense. He acknowledged that he knew he was required to register his vehicle with the BCA, but he

4

claimed that he told Agent Diekman about the GMC Sierra and was under the impression that Diekman would "take care of everything."

The jury returned a verdict of guilty, and the district court sentenced Jones to serve 24 months in prison. This appeal follows.

## DECISION

Jones contends that the district court erred in instructing the jury. We review a district court's jury instructions for an abuse of discretion. *State v. Huber*, 877 N.W.2d 519, 522 (Minn. 2016). The district court enjoys considerable latitude in selecting jury instructions and the language of those instructions. *Id.* But the jury instructions must fairly and adequately explain the law of the case and not materially misstate the law. *Id.* We review the jury instructions as a whole to determine whether they fairly and adequately explain the law. *Id.*

"A defendant's failure to propose specific jury instructions or to object to instructions before they are given to the jury generally constitutes a waiver of the right to appeal" any error in the instructions. *State v. Cross*, 577 N.W.2d 721, 726 (Minn. 1998). Nonetheless, "a failure to object will not cause an appeal to fail if the instructions contain plain error affecting substantial rights or an error of fundamental law." *Id.*; *see also Huber*, 877 N.W.2d at 522 (reviewing unobjected-to jury instructions for plain error).

Under the plain-error test, this court will not grant relief unless (1) there is an error, (2) the error is plain, and (3) the error affects the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). An error is "plain" if it is clear or obvious under current law, *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002) (quotation

5

omitted), and an error is clear or obvious if it "contravenes case law, a rule, or a standard of conduct," *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006).

An erroneous jury instruction affects a defendant's substantial rights if the error was prejudicial and affected the outcome of the case. *Huber*, 877 N.W.2d at 525. "An error in instructing the jury is prejudicial if there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury's verdict." *Id.* (quotation omitted). The defendant has the "heavy burden" of proving prejudice. *Id.* In determining whether a defendant has met his burden of proving prejudice, this court considers (1) whether the relevant issue was contested at trial, and (2) whether the state's evidence on the issue was overwhelming. *Id.* at 525-26.

If the first three requirements of the plain-error test are satisfied, an appellate court considers whether the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005) (quotation omitted). If an appellate court concludes that any prong of the plain error analysis is not satisfied, it need not consider the other prongs. *State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012).

**I.**

Jones argues that the district court erred by failing to provide a "specific unanimity instruction" regarding his violation of the POR statute. Jones acknowledges that he did not request a specific unanimity instruction. We therefore review for plain error. *See State v. Wenthe*, 865 N.W.2d 293, 299 (Minn. 2015) (applying plain-error test where defendant did not request a specific unanimity instruction).

6

Minnesota requires unanimous jury verdicts in all criminal cases.  Minn. R. Crim. P. 26.01, subd. 1(5); *State v. Hart*, 477 N.W.2d 732, 739 (Minn. App. 1991), *review denied* (Minn. Jan. 16, 1992).  When the state presents evidence of multiple acts to prove an offense and each act could constitute an element of the crime charged, the jurors must unanimously agree regarding which acts the defendant committed.  *State v. Rucker*, 752 N.W.2d 538, 548 (Minn. App. 2008), *review denied* (Minn. Sept. 23, 2008); *State v. Stempf*, 627 N.W.2d 352, 355 (Minn. App. 2001).  "Where jury instructions allow for possible significant disagreement among jurors as to what acts the defendant committed, the instructions violate the defendant's right to a unanimous verdict."  *Stempf*, 627 N.W.2d at 354.

Under the POR statute, Jones was required to provide his corrections agent or law enforcement authority with "the year, model, make, license plate number, and color of all motor vehicles owned or regularly driven by [him]."  Minn. Stat. § 243.166, subd. 4a(a)(6) (2012).  Jones was charged with a single violation of Minn. Stat. § 243.166, subd. 5(a) (2012), which provides that "[a] person required to register under this section who knowingly violates any of its provisions or intentionally provides false information to a corrections agent, law enforcement authority, or the bureau is guilty of a felony."  Thus, the statute describes two separate criminal acts, each with its own mens rea: (1) knowingly violating the registration requirements, and (2) intentionally providing false information.

We need not determine whether the district court's failure to provide a unanimity instruction is error that is plain because there is no reasonable likelihood that the alleged error significantly affected the jury verdict and, therefore, Jones's substantial rights.  *See*

*Brown*, 815 N.W.2d at 620 (stating that a plain-error claim may fail on any one prong). The state presented strong evidence that Jones knowingly violated the POR requirements and intentionally provided false information in violation of the POR statute. Jones's defense to both acts was that he sincerely believed he had satisfied his POR obligation by registering the GMC Sierra with the DMV and therefore did not knowingly fail to register the vehicle or intentionally provide false information regarding the vehicle. Although the two acts have different mens rea requirements, Jones's claim that he sincerely believed that he had satisfied his POR obligation by registering his GMC Sierra with the DMV—if believed—would negate both mens rea requirements. *See State v. Watkins*, 840 N.W.2d 21, 29-30 (Minn. 2013) (explaining that a reasonable belief may negate the existence of a mental state essential to a charged crime).

Because Jones presented the same defense to both acts, it is not reasonably likely that the district court's failure to give a unanimity instruction had a significant effect on the jury's verdict. If Jones genuinely believed that he had satisfied his POR obligation, he could not have knowingly violated the vehicle-registration requirement or intentionally provided false information regarding his compliance with the requirement. If the jury believed Jones's testimony and thought his belief was reasonable, it would have acquitted him. If, on the other hand, the jury thought Jones's belief was unreasonable or fabricated, there was no logical basis to find Jones guilty based on one of the underlying alleged acts, but not the other.

Given the significant evidence presented by the state to impeach Jones's claim that he sincerely believed he had complied with the POR statute by registering the GMC Sierra

with the DMV, we have no reason to conclude that the jury's guilty verdict stems from the alleged instructional error, and not the overwhelming evidence of guilt. *See Huber*, 877 N.W.2d at 527 (explaining that a "large quantum" of evidence presented by the state may be sufficient to overcome prejudice caused by instructional error). In sum, Jones's claim for relief based on the district court's failure to provide a unanimity instruction fails under the third prong of the plain-error test, and he therefore is not entitled to relief.

**II.**

Jones argues that the district court erred by failing to define "knowingly" in its jury instructions. "[A district] court must instruct the jury on all matters of law necessary to render a verdict." Minn. R. Crim. P. 26.03, subd. 19(6). "[I]t is well settled that the court's instructions must define the crime charged and the court should explain the elements of the offense rather than simply read statutes." *State v. Ihle*, 640 N.W.2d 910, 916 (Minn. 2002).

Minn. Stat. § 243.166, subd. 5(a), provides that it is a crime for a person required to register under the POR statute to "knowingly violate[] any of its provisions." The district court instructed the jury that to find Jones guilty, it must find that Jones "knowingly violated any of the requirements to register." The instructions defined "to know" as "requir[ing] only that the actor believes that the specified fact exists." Jones argues that the district court should have further instructed the jury that the term "knowingly" means "perceived directly." *See Watkins*, 840 N.W.2d at 29 (interpreting "knowingly" to require a defendant to "perceive directly; grasp in mind with clarity or certainty" (quotation omitted)). Because Jones did not request that instruction, we review for plain error. *See Wenthe*, 865 N.W.2d at 299.

9

We need not determine whether the district court erred by failing to define knowingly as "perceived directly" because Jones has not met his heavy burden to show prejudice. *See Brown*, 815 N.W.2d at 620 (stating that a plain-error claim may fail on any one prong). Although Jones contested the knowledge element at trial, the state presented overwhelming evidence that Jones knowingly failed to register his vehicle. For example, Jones acknowledged his receipt of the registration requirements during his initial registration process by initialing each line of the POR form and Jones previously registered a GMC Jimmy with the BCA, demonstrating compliance with POR requirements. Moreover, Jones's counsel emphasized the knowledge requirement in closing argument at trial, stressing that Jones mistakenly, but honestly, believed that he had registered his vehicle.

On this record, it is unlikely that the jury did not adequately understand the knowledge element of the offense. This is not a case in which the district court completely failed to instruct the jury regarding the requisite mens rea. *See Watkins*, 840 N.W.2d at 30 (concluding that the complete omission of the "knowingly" element from the jury instructions affected the defendant's substantial rights). Nor is it a case in which the jury could have believed Jones's testimony and nonetheless convicted him of the offense as a result of the instructional error. *See Huber*, 877 N.W.2d at 527 (concluding that the defendant's substantial rights were affected by an erroneous instruction where the jury could have believed the defendant's version of events and yet still convicted him because of the instructional errors).

Given the strength of the state's evidence and its significant impeachment of Jones's credibility, it is not reasonably likely that the district court's failure to define "knowingly" as "perceived directly" had a significant effect on the jury's verdict. In sum, Jones's claim for relief based on the district court's failure to define "knowingly" as "perceived directly" fails under the third prong of the plain-error test, and he therefore is not entitled to relief.

**III.**

Jones argues that even if the two alleged instructional errors were individually harmless, the cumulative effect of the errors deprived him of a fair trial. In rare cases, the cumulative effect of trial errors can deprive a defendant of his constitutional right to a fair trial where the errors, none of which alone might have been enough to tip the scales, prejudice the defendant by producing a biased jury. *State v. Davis*, 820 N.W.2d 525, 538 (Minn. 2012). When determining whether a defendant was denied a fair trial as a result of cumulative errors, "reviewing courts balance the egregiousness of the errors against the weight of proof against the defendant." *State v. Swinger*, 800 N.W.2d 833, 841 (Minn. App. 2011), *review denied* (Minn. Sept. 28, 2011).

For example, in *State v. Duncan*, this court found numerous errors including (1) the prosecutor's comments regarding the defendant's credibility, (2) the prosecutor's appeal to the passions of the jury, (3) the prosecutor's statements urging the jury to protect society and send a message, and (4) the district court's failure to obtain Duncan's consent to a jury instruction regarding his right to remain silent. 608 N.W.2d 551, 555-58 (Minn. App. 2000), *review denied* (Minn. May 16, 2000). Although this court concluded that each instance of error or misconduct individually was harmless, we granted relief under the

11

cumulative-error doctrine because it was a close case that relied almost solely on "somewhat imprecise and equivocal interviews and testimony." *Id.* at 558.

This is not a close case. The state presented detailed testimony from several BCA agents showing that Jones understood that he was required to register his vehicle with the BCA. On cross-examination, the state severely impeached Jones's testimony that he honestly believed that he had satisfied his registration requirements by registering with the DMV. Moreover, the alleged instructional errors in this case are not as egregious as those in cases in which we have reversed under the cumulative-error doctrine. *See, e.g.*, *State v. Peterson*, 530 N.W.2d 843, 846-48 (Minn. App. 1995) (concluding that the cumulative effect of the following errors required reversal: the district court instructed the jury to continue deliberating until it reached a unanimous verdict; the defendant's confrontation rights were violated; and the prosecutor engaged in misconduct during closing argument, which turned *Spreigl* evidence into improper substantive evidence). Because the weight of the evidence against Jones was strong and the alleged errors are not egregious under the circumstances of this case, the cumulative effect of the alleged errors did not deprive Jones of a fair trial.

**Affirmed.**