*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0111**

State of Minnesota,
Respondent,

vs.

Mark John Jenni,
Appellant.

**Filed January 5, 2026**
**Affirmed**
**Halbrooks, Judge**[*]

Hubbard County District Court
File No. 29-CR-23-1267

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John A. Olson, Hubbard County Attorney, Park Rapids, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Peter H. Dahlquist, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Schmidt, Presiding Judge; Bentley, Judge; and

Halbrooks, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**HALBROOKS**, Judge

Appellant challenges his conviction of insurance fraud, arguing that the prosecutor committed misconduct that constituted reversible plain error by (1) soliciting evidence regarding the prevalence and cost of insurance fraud and (2) arguing in closing and rebuttal that the costs of insurance fraud are passed on to the county's insurance customers. We affirm.

## FACTS

In July 2023, appellant Mark John Jenni applied for a homeowner's insurance policy with Liberty Mutual Insurance for a residence located in Park Rapids, Hubbard County. Jenni's application represented that (1) the property was his primary residence; (2) he purchased the residence in 2023; (3) it was not under construction or undergoing significant renovations; (4) it had not been subject to an insurance claim or loss within the previous five years; and (5) no other insurance coverage on the property had been canceled or denied in the past year.

Approximately one month after obtaining the policy, Jenni filed a claim with Liberty Mutual, reporting a burglary loss valued at more than $80,000 in stolen tools and property damage. Jenni did not report the burglary to the Hubbard County Sheriff's Office, although he called the sheriff's office to report trespassers. A responding sheriff did not observe any signs of burglary.

Liberty Mutual denied coverage, citing exclusions for theft from dwellings under construction and noting Jenni's acknowledgment to an adjuster that he was living

2

elsewhere while the home was being renovated. Shortly after denying Jenni's claim, Liberty Mutual notified the Minnesota Commerce Fraud Bureau about its suspicions regarding Jenni's insurance application. At the time, a special agent with the bureau was already investigating Jenni regarding a 2022 claim he made to a different insurance company for water and fire damage to the property. That claim had been denied, and the policy was canceled.

Respondent State of Minnesota charged Jenni with one count of insurance fraud under Minn. Stat. § 609.611, subd. 1(a)(1) (2022), and he was convicted following a jury trial. The district court sentenced Jenni to 12 months in prison, stayed for five years of probation, and ordered him to serve 75 days in the county jail.

This appeal follows.

## DECISION

Jenni contends that the prosecutor committed misconduct that requires reversal by (1) eliciting irrelevant testimony about the prevalence and cost of insurance fraud and (2) stating during closing and rebuttal arguments that those costs are passed on to insurance customers. Jenni did not object during trial to this testimony or argument.

We review unobjected-to claims of prosecutorial misconduct under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Under this standard, the burden is on the appellant to prove that the prosecutor's conduct constituted (1) error and (2) that the error was plain. *Id.* If the appellant makes that showing, the burden then shifts to the state to show that the plain error did not affect the appellant's substantial rights. *Id.* A prosecutor's conduct constitutes error when it "was, in fact,

erroneous." *State v. Portillo*, 998 N.W.2d 242, 248 (Minn. 2023). That error is plain if it "contravenes case law, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302. A prosecutor's "statement must be read in context," and we look at "the closing argument as a whole, rather than to selected phrases and remarks." *Ture v. State*, 681 N.W.2d 9, 19-20 (Minn. 2004).

During direct examination, the prosecutor asked a fraud investigator for Liberty Mutual a series of questions about his role in investigating insurance fraud. In one instance, the prosecutor asked the investigator about the general costs of insurance fraud. The investigator replied, "[A]pproximately ten percent [of] . . . claim payments are . . . not meritorious . . . . [A]s far as dollar figures, . . . it's in the billions." The prosecutor then asked the investigator, "[D]o you know how the insurance companies deal with that loss?" The investigator replied, "Well, in the simplest terms, it . . . get[s] passed on [to] the consumer." Jenni contends the prosecutor committed misconduct by eliciting this testimony because it was irrelevant, and thus inadmissible, and did not bear directly on an element of the crime of insurance fraud. As previously noted, appellant did not object to this testimony.

I. **The prosecutor did not err in eliciting testimony regarding insurance fraud or by stating during his closing argument and rebuttal that the costs of insurance fraud are passed to customers.**

A. **The investigator's testimony.**

A prosecutor errs by eliciting inadmissible testimony. *Ramey*, 721 N.W.2d at 300. But "brief" and "unsolicited" inadmissible statements do not constitute prosecutorial misconduct. *State v. Patzold*, 917 N.W.2d 798, 807 (Minn. App. 2018) (quotation

4

omitted), *rev. denied* (Minn. Nov. 27, 2018). Relevant evidence is admissible, unless another rule or law prohibits it. Minn. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Rule 401 "adopts a minimal relevancy approach." *State v. Provost*, 490 N.W.2d 93, 99 (Minn. 1992). "A fact is relevant if, when taken alone or in connection of other facts, [it] warrants a jury in drawing a logical inference assisting, even though remotely, the determination of the issue in question." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005).

We disagree with Jenni that the admission of the investigator's testimony that insurance fraud costs the insurance industry billions of dollars was an error. The prosecutor's question does not appear to be an attempt to elicit inadmissible or prejudicial evidence, but rather a logical question following the investigator's testimony about how an applicant's claim history can affect the assessment of the applicant's risk. Further, the testimony appears only once in the investigator's testimony. In the context of the prosecutor's questioning, the insurance investigator's brief response about the cost of insurance fraud to the industry was relevant to establish the investigator's background knowledge and to provide context for his subsequent testimony.

The testimony may also be understood as an explanation of the insurance industry's interest in asking applicants specific questions designed to minimize its risk. With billions of dollars at stake, the industry has an interest in investigating fraud. Additionally, the investigator answered the questions with a variety of information, noting that he has

5

worked in the industry for decades; that a recent industry survey indicated that ten percent of insurance claims are non-meritorious, but the industry investigates only three percent of those non-meritorious claims; and finally, that the cost of fraud on the industry is "in the billions."

Even though we do not find these statements to be error, we address the second prong of the modified-plain-error standard. For an error to be plain, it must be "clear or obvious." *Ramey*, 721 N.W.2d at 302 (quotation omitted). "Usually this is shown if the error contravenes case law, a rule, or a standard of conduct." *Id.* "An error is plain if it contravenes a principle that is conclusively resolved at the time of appeal." *Portillo*, 998 N.W.2d at 250 (quotation omitted). "All relevant evidence is admissible, except as otherwise provided by the United States Constitution, the State Constitution, statute, by these rules, or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible." Minn. R. Evid. 402. Stated another way, if evidence is even minimally relevant, it may be admissible. *State v. Hallmark*, 927 N.W.2d 281, 299 (Minn. 2019). But relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403.

Jenni does not dispute this principle and does not cite an instance in which this court or the supreme court has called into doubt the basic definition of relevancy. We are also unable to locate a case from this court or the supreme court supporting Jenni's argument. And evidence need not go *only* to an ultimate fact to be relevant. *See Schulz*, 691 N.W.2d at 478 ("Evidence is relevant and has probative value when it, in some degree, advances the inquiry."). For example, evidence may be used to challenge witness credibility,

6

*State v. McArthur*, 730 N.W.2d 44, 51 (Minn. 2007), or establish a witness's bias or prejudice, Minn. R. Evid. 616. Ultimately, we conclude that it was not plain error for the prosecutor to elicit the investigator's testimony about the cost of insurance fraud to the industry and that the costs are passed to customers.

**B.    The prosecutor's closing argument.**

Jenni next argues that the prosecutor's statements during closing argument—that the costs of insurance fraud are passed on to Hubbard County customers—constituted misconduct. The prosecutor made the following two statements during his closing argument:

> Insurance fraud affects all of its . . . customers, . . . as the cost of insurance fraud is pas[s]ed on to the consumer. That's why making a material misstatement on an insurance application and receiving a lower premium rate . . . is a crime.
>
> . . . .
>
> If Liberty Mutual would have paid out, and frankly, the fact that Liberty Mutual had a policy that was much lower than it should have been, if they did a policy at all, . . . that loss is to Hubbard County consumers.

And the prosecutor made the following statement during his rebuttal argument: "The defendant purposely did what he did in this case to try to fraudulently receive over 80,000 dollars from an insurance company that would be passed on to consumers."

As previously discussed, to satisfy the first prong of the modified-plain-error test, Jenni must show that the prosecutor's statement was, in fact, erroneous. "Prosecutors have 'considerable latitude' during closing arguments and are 'not required to make a colorless argument.'" *Patzold*, 917 N.W.2d at 808 (quoting *State v. Williams*, 586 N.W.2d 123, 127

7

(Minn. 1998)).  But a prosecutor's argument must adhere to the evidence presented during trial and any reasonable inferences that may be drawn from the evidence.  *State v. DeWald*, 463 N.W.2d 741, 744 (Minn. 1990).  The prosecutor must avoid statements that are "calculated to inflame the passions of the jury or prejudice the jury against the [appellant]." *Id.* at 744-45.  When misconduct is alleged, the appellant cannot rely on a few isolated statements; the misconduct must be considered in the context of the parties' arguments and the entire trial.  *State v. Powers*, 654 N.W.2d 667, 679 (Minn. 2003).

Here, the prosecutor's statement adhered to the evidence presented at trial.  And that statement was not "calculated to inflame the passions of the jury or prejudice the jury against the [appellant]." *DeWald*, 463 N.W.2d at 744-45.  In our review, we consider the context of the statements and the overall theme of the prosecutor's closing argument and rebuttal.  In the first statement, the prosecutor did not argue that the jury should convict Jenni because the cost of insurance fraud is passed on to customers.  Instead, his argument was that lying on an insurance application is criminalized as fraud because it drives up insurance costs for everyone.  That is a reasonable inference from the evidence, as the insurance investigator stated as much during direct examination.

In his second statement, the prosecutor referred to the location of the insurance fraud—Hubbard County.  The district court instructed the jury to determine whether the insurance fraud had occurred in Hubbard County.  And Jenni's jail text messages that were in evidence suggested that he was not in Hubbard County when he completed the insurance application.  But, as the prosecutor argued with respect to the jurisdictional issue, whether Jenni was physically in Hubbard County did not change the fact that he made

misstatements on his insurance application concerning a Hubbard County property. In order to distinguish and contextualize that the property's location mattered, the prosecutor stated:

> [T]he fact that the residence is in Hubbard County means that it happened in Hubbard County. The loss is in Hubbard County. If Liberty Mutual would have paid out, . . . that loss is to Hubbard County consumers . . . . [I]t is a Hubbard County case because the property is in Hubbard County.

Reviewing the closing and rebuttal arguments in their entirety, we conclude that, while close, the prosecutor did not urge the jurors to convict Jenni because they were members of Hubbard County and would bear the cost of his fraudulent conduct. Further, the statement does not urge the jury to convict Jenni to protect society, *State v. Duncan*, 608 N.W.2d 551, 556 (Minn. App. 2000), *rev. denied* (Minn. May 16, 2000), nor does it urge the jury to hold Jenni accountable for his alleged conduct, *State v. Salitros*, 499 N.W.2d 815, 819 (Minn. 1993). The theme of the prosecutor's closing and rebuttal argument is also relevant to this analysis. Upon our review of the trial transcripts, the prosecutor seemed focused on reiterating the evidence presented at trial that supports a finding that Jenni intentionally made multiple material misstatements on his insurance application.

## II. The prosecutor's alleged misconduct did not affect Jenni's substantial rights.

Having concluded that Jenni has not established plain error with respect to the alleged misconduct, we need not address the third prong of the plain-error test regarding whether the error affected his substantial rights. We nevertheless address this prong for the sake of completeness. To show that the alleged misconduct did not affect the appellant's substantial rights, "the state must prove 'that there is no reasonable likelihood

that the absence of the misconduct in question would have had a significant effect on the verdict.'" *State v. Valentine*, 787 N.W.2d 630, 640 (Minn. App. 2010) (quoting *Ramey*, 721 N.W.2d at 302), *rev. denied* (Minn. Nov. 16, 2010). To assess the impact of the misconduct on the jury's verdict, we "consider the strength of the evidence against the [appellant], the pervasiveness of the improper suggestions, and whether the [appellant] had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007).

Jenni contends that he lacked an opportunity to rebut the testimony, that the prosecutor's conduct was pervasive, and that the evidence against him was weak. We are not persuaded. Jenni had at least three opportunities to rebut the alleged improper testimony and argument. First, the investigator's testimony occurred about halfway through direct examination; Jenni's attorney did not object. Second, Jenni's attorney did not address the testimony on cross-examination or on recross-examination. Third, Jenni's attorney did not object to the statements during the prosecutor's closing or in his own closing argument. The fact that Jenni's attorney had several opportunities to "rebut the improper suggestions," but failed to utilize them negates Jenni's argument. *Id.*

Further, the prosecutor's statements were not pervasive. The prosecutor's statement that insurance fraud costs companies billions of dollars and that the costs are passed on to the customers occupied only a few lines during the insurance investigator's testimony, which covered 50 pages in the trial transcript. The statement that insurance fraud costs are passed on to consumers was not mentioned again until the prosecutor's closing and rebuttal argument. In those arguments, which totaled approximately ten pages, the prosecutor's

10

statement occupied approximately four sentences. *See State v. Epps*, 964 N.W.2d 419, 424 (Minn. 2021) (stating that four sentences in 28 pages of closing argument was "brief and not repeated"); *Davis*, 735 N.W.2d at 682 (noting that the prosecutor's improper suggestions were not pervasive because they covered "less than one of the 64 pages of the transcript containing [the witness's] testimony").

Finally, the evidence against Jenni was strong. The Liberty Mutual application, which Jenni electronically signed, represented that the property was: his primary residence; purchased in 2023; not under construction or significant renovation, and in good repair; and that he had not had a claim denied or a policy canceled and had not filed other claims within the previous five years.

The state introduced evidence that several of these representations were false when made and that Jenni knew or had reason to know they were false. Evidence presented to the jury during trial showed that in 2022, Jenni had filed an insurance claim with another insurance provider for more than $10,000 in alleged fire and water damage on the same property and that the claim was denied and Jenni's insurance policy was canceled. That evidence flatly contradicts Jenni's "no prior claim/no cancellation" response on the Liberty Mutual application. As to ownership and occupancy, both the special agent and an investigator with the Hubbard County Sheriff's Office (the county investigator) testified that Jenni's business partner, not Jenni, owned the residence in July 2023 and that Jenni did not live there.[1] A neighbor also testified that no one lived in the house during the

---

[1] Jenni disputes a witness's credibility and argues that, based on an order in a civil case, he owned the residence in July 2023 when he completed the insurance application. But we

relevant period and that Jenni appeared only during the day on some weekends. Jenni's own jail text messages acknowledged that the house was not yet in his name, that he held only a constructive-trust interest, and that he was trying to obtain legal title in his name, reinforcing the jury's ability to conclude that he understood he was not the owner when he represented on the application that he had purchased the residence in 2023 and that it was his primary home.

The record also contains evidence that the property's condition and use did not match Jenni's representations and that he was aware of that inaccuracy. Jenni's business partner's mother described the condition of the house as "unlivable" in mid-2023: the bathrooms were "tor[n] to pieces," there was evidence of fire damage around the furnace and extensive water and mold damage, no running water, and no working kitchen. The county investigator testified that, based on his investigation and interviews with neighbors, the property had been in serious disrepair since at least late 2022. And yet, on the application, Jenni denied any major repairs, denied that the dwelling was under construction or renovation, and he presented that the property was an ordinary, occupied principal residence. From this evidence of long-standing damage and Jenni's 2022 claim for similar damage, the jury could reasonably infer that he knew the actual condition of the

---

do not question witness credibility. *State v. Pendleton*, 759 N.W.2d 900, 909 (Minn. 2009). And the civil order was not introduced at trial and is not part of the record on appeal, so we may not consider it. *State v. Marth*, 25 N.W.3d 911, 916 n.1 (Minn. App. 2025) ("The general rule is that this court will not consider evidence outside the record." (quotation omitted)), *rev. denied* (Minn. Oct. 29, 2025).

house and nonetheless chose to describe it otherwise for purposes of obtaining insurance coverage.

Finally, Jenni's post-application conduct provided a basis for the jury to infer an intent to defraud. Within approximately a month of the policy's effective date, Jenni submitted two claims, seeking over $80,000 for alleged burglary losses and property damage at the residence. But despite the size of the loss, Jenni never reported any burglary or theft to the Hubbard County Sheriff's Office, even when he called law enforcement to complain about people on the property and request that they be charged with trespass.

In response to Liberty Mutual's denial letter and explanatory email citing policy exclusions related to dwellings under construction and his own statement that he was living with his uncle during renovations, Jenni wrote, "If I don't get a check[,] . . . my lawyer will be calling"—language the jury could view as reflecting an insistence on payment despite his awareness of the property's condition and policy terms. His jail texts about obtaining insurance so that he would be "ok" if something happened to the house, coupled with his efforts to later secure title and sell the home, further support an inference that the misstatements on the application were part of a broader plan to extract insurance proceeds as opposed to innocent mistakes.

In sum, the record contains multiple evidentiary avenues for the jury to convict Jenni: documentary evidence of false statements in the application, independent testimony and records contradicting those statements, Jenni's admissions in emails and text messages, and circumstantial evidence of motive in the form of the timing related to the quickly filed claim and lack of a police report following the alleged burglary. The district court later

13

characterized the evidence as "overwhelming," and the jury deliberated for approximately 40 minutes before reaching a verdict. Apart from any challenged testimony or arguments by the prosecutor, the full record amply supports the jury's decision to convict Jenni of insurance fraud. Given the strength of the evidence, the investigator's brief testimony and the prosecutor's isolated reference to that testimony during closing do not constitute reversible misconduct.

**Affirmed.**